UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

February 2008 Grand Jury

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>             Plaintiff,<br><br>             v.<br><br>ALBERT TALTON,<br>PAUL MCCORRY,<br>TROY STROUD,<br>CORREY NERO,<br>EARNEST ALEXANDER, and<br>DAVID GOLDBERG,<br><br>             Defendants. | CR No. 08-__**CR08-00629**__<br><br>**I N D I C T M E N T**<br><br>[18 U.S.C. § 371: Conspiracy;<br>18 U.S.C. § 471: Counterfeiting<br>Obligations of the United<br>States; 18 U.S.C. § 472:<br>Passing and Possessing<br>Counterfeit Currency of the<br>United States with Intent to<br>Defraud; 18 U.S.C. § 473:<br>Dealing in Counterfeit Currency<br>of the United States with<br>Intent to Defraud] |

The Grand Jury charges:

COUNT ONE

[18 U.S.C. § 371]

A. OBJECTS OF THE CONSPIRACY

Beginning on a date unknown to the Grand Jury and continuing to on or about May 8, 2008, in Los Angeles County, within the Central District of California, defendants ALBERT TALTON ("TALTON"), PAUL MCCORRY ("MCCORRY"), TROY STROUD ("STROUD"), CORREY NERO ("NERO"), EARNEST ALEXANDER ("ALEXANDER"), and

DAVID GOLDBERG ("GOLDBERG"), and others known and unknown to the Grand Jury, knowingly and intentionally conspired and agreed with each other to commit offenses against the United States, namely:

1. To falsely, and with intent to defraud, falsely make and counterfeit obligations and securities of the United States, namely, counterfeit Federal Reserve Notes, in violation of 18 U.S.C. § 471;

2. To knowingly and with intent to defraud, pass counterfeit securities and obligations of the United States, in violation of 18 U.S.C. § 472;

3. To knowingly and with intent to defraud, possess counterfeit securities and obligations of the United States, in violation of 18 U.S.C. § 472 ; and

4. To sell, exchange, transfer, and deliver counterfeit obligations and securities of the United States, knowing that the money was counterfeit, and with the intent that such counterfeit money be passed, published, and used as true and genuine, in violation of 18 U.S.C. § 473.

B. <u>MEANS BY WHICH THE OBJECTS OF THE CONSPIRACY WERE TO BE ACCOMPLISHED</u>

The means by which the objects of the conspiracy were to be accomplished included the following:

1. Defendant TALTON would manufacture counterfeit currency.

2. Defendants MCCORRY and GOLDBERG would assist defendant TALTON in manufacturing counterfeit currency.

3. Defendant TALTON would provide and sell counterfeit currency to others with the intent that it eventually be passed as genuine.

4. Defendant STROUD would purchase counterfeit currency from defendant TALTON and would sell it to others with the intent that it be passed as genuine.

5. Defendant MCCORRY would obtain counterfeit currency from defendant TALTON and would sell it to others, including to defendants NERO and ALEXANDER, with the intent that it eventually be passed as genuine.

6. Defendants NERO and ALEXANDER would purchase counterfeit currency from defendant MCCORRY and would sell it to others with the intent that it be passed as genuine.

6. Defendant STROUD would pass counterfeit currency with the intent to defraud.

C.  OVERT ACTS

In furtherance of the conspiracy and to accomplish the objects of the conspiracy, defendants TALTON, MCCORRY, STROUD, NERO, ALEXANDER, and GOLDBERG, and others known and unknown to the Grand Jury, committed various overt acts on or about the following dates, using coded language, within the Central District of California, including but not limited to the following:

**Printing Counterfeit Currency**

1. In or about April 2006, defendant TALTON began to make counterfeit $100 bills;

2. In or about February 2008, defendant TALTON began to make counterfeit $20 bills;

**February 27, 2008 Conversations**

3. On February 27, 2008, defendant STROUD stated that he sold counterfeit currency;

3

4. On February 27, 2008, defendant STROUD stated that defendant TALTON could print counterfeit currency;

**March 5, 2008 Transaction**

5. On or before March 5, 2008, defendant TALTON sold defendant STROUD counterfeit currency so that defendant STROUD could sell it to a confidential informant for the United States Secret Service ("CI-1");

6. On March 5, 2008, defendant STROUD gave CI-1 $3,700 in counterfeit $100 bills in exchange for $900 in genuine currency;

**March 11, 2008 Transaction**

7. On March 11, 2008, defendant STROUD provided a confidential informant ("CI-2") with $1,500 in counterfeit $100 bills in exchange for $450 in genuine currency;

8. On March 14, 2008, defendant STROUD told CI-2 that he could sell CI-2 $5,000 in counterfeit currency;

9. On March 14, 2008, defendant STROUD told CI-2 that defendant TALTON was now printing counterfeit $20 bills and was putting the same amount of effort into making counterfeit $20 bills as he did with making the counterfeit $100 bills;

**March 28, 2008 Transaction**

10. On March 27, 2008, by telephone, defendant STROUD told CI-2 that he would contact defendant TALTON and then call CI-2 to arrange the sale of counterfeit currency;

11. On March 28, 2008, defendant STROUD showed CI-2 sample counterfeit $20 bills and said that defendant TALTON was printing more bills;

12. On March 28, 2008, defendant STROUD gave CI-2 a counterfeit $20 bill to pass;

**April 10, 2008 Transaction**

13. On April 10, 2008, by telephone, defendant ALEXANDER agreed to sell $2,500 in counterfeit $100 bills to a confidential informant ("CI-3");

14. On or before April 10, 2008, defendant TALTON made counterfeit $100 bills;

15. On or before April 10, 2008, defendant TALTON provided counterfeit $100 bills to defendant MCCORRY so that defendant MCCORRY could sell them to others;

16. On April 10, 2008, defendant MCCORRY sold defendant NERO counterfeit $100 bills so that defendant NERO and defendant ALEXANDER could sell them to others;

17. On April 10, 2008, defendant NERO met with CI-3 and showed CI-3 a sample of the counterfeit $20 bills that defendant TALTON was making;

18. On April 10, 2008, defendant NERO gave defendant ALEXANDER $2,500 in counterfeit $100 bills;

19. On April 10, 2008, defendant ALEXANDER gave CI-3 $2,500 in counterfeit $100 bills in exchange for $750 in genuine currency;

20. On April 10, 2008, defendant ALEXANDER took the $750 in genuine currency that he received from CI-3, and paid defendant NERO $600;

**April 15, 2008 Transaction**

21. On April 15, 2008, defendant STROUD used a counterfeit $20 bill made by defendant TALTON to purchase fast food;

**Additional Printing of Counterfeit Currency**

22. On April 18, 2008, defendant TALTON purchased printer

5

ink in order to print counterfeit currency;

23. On or before April 24, 2008, defendant TALTON printed counterfeit $20 bills;

24. On April 30, 2008, defendants TALTON and MCCORRY purchased three bales of newspaper print paper in order to print counterfeit currency;

25. On April 30, 2008, defendant TALTON brought three bales of newspaper print paper into his residence in Lawndale, California;

26. On May 1, 2008, defendant TALTON purchased three boxes of paper in order to print counterfeit currency;

**May 1, 2008 Transaction**

27. On May 1, 2008, by telephone, defendant ALEXANDER agreed to sell $2,000 in counterfeit $20 bills to CI-3;

28. On or before May 1, 2008, defendant TALTON made counterfeit $100 and $20 bills;

29. On May 1, 2008, defendant TALTON provided counterfeit $20 bills to defendant MCCORRY so that defendant MCCORRY could sell them to others;

30. On May 1, 2008, defendant MCCORRY brought counterfeit $100 bills to sell to defendant NERO but did not do so because CI-3 had ordered counterfeit $20 bills

31. On May 1, 2008, defendant ALEXANDER told CI-3 that defendant MCCORRY had brought the wrong denomination of counterfeit bills to the transaction;

32. On May 1, 2008, defendant NERO gave CI-3 $40 in counterfeit $20 bills as an apology for the fact that defendant MCCORRY's error delayed the transaction;

33. On May 1, 2008, defendant TALTON provided counterfeit $20 bills to defendant MCCORRY so that defendant MCCORRY could sell them to others;

34. On May 1, 2008, defendant MCCORRY sold defendant NERO counterfeit $20 bills so that defendants NERO and ALEXANDER could sell them to others;

35. On May 1, 2008, defendant NERO gave defendant ALEXANDER $2,000 in counterfeit $20 bills;

36. On May 1, 2008, defendant ALEXANDER gave CI-3 $2,000 in counterfeit $20 bills in exchange for $725 in genuine currency;

**May 8, 2008 Transaction and Printing of Counterfeit Currency**

37. On May 8, 2008, by telephone, defendant ALEXANDER agreed to sell $15,000 in counterfeit currency, to include counterfeit $100 and $20 bills, to CI-3;

38. On May 8, 2008, defendants MCCORRY and NERO agreed to sell $15,000 in counterfeit currency;

39. On May 8, 2008, defendants TALTON, MCCORRY, and GOLDBERG worked together to make counterfeit currency;

40. On May 8, 2008, defendant GOLDBERG glued pieces of paper together to help make counterfeit currency;

41. On or before May 8, 2008, defendant GOLDBERG cut printed sheets of counterfeit currency to help complete the counterfeit currency;

42. On May 8, 2008, defendants TALTON, MCCORRY, and GOLDBERG possessed approximately $1.2 million in partially completed counterfeit notes and approximately $162,500 in completed counterfeit notes.

## COUNT TWO

[18 U.S.C. § 473]

On or about March 5, 2008, in Los Angeles County, within the Central District of California, defendant TROY STROUD sold, exchanged, transferred, and delivered counterfeited obligations and other securities of the United States, namely, approximately $3,700 in counterfeited one hundred dollar Federal Reserve Notes, knowing that the notes were counterfeited, and with the intent that the counterfeited notes be passed, published, and used as true and genuine.

## COUNT THREE

[18 U.S.C. § 473]

On or about March 28, 2008, in Los Angeles County, within the Central District of California, defendant TROY STROUD sold, exchanged, transferred, and delivered counterfeited obligations and other securities of the United States, namely, a twenty dollar counterfeited Federal Reserve Note, knowing that the note was counterfeited, and with the intent that the counterfeited note be passed, published, and used as true and genuine.

## COUNT FOUR

[18 U.S.C. § 473]

On or about April 10, 2008, in Los Angeles County, within the Central District of California, defendants PAUL MCCORRY, CORREY NERO, and EARNEST ALEXANDER sold, exchanged, transferred, and delivered counterfeited obligations and other securities of the United States, namely, approximately $2,500 in counterfeited hundred dollar Federal Reserve Notes, knowing that the notes were counterfeited, and with the intent that the counterfeited notes be passed, published, and used as true and genuine.

10

## COUNT FIVE

[18 U.S.C. § 472]

On or about April 15, 2008, in Los Angeles County, within the Central District of California, defendant TROY STROUD, acting with intent to defraud, passed a counterfeited obligation and other security of the United States, namely, a counterfeited twenty dollar Federal Reserve Note, knowing that the note was counterfeited.

## COUNT SIX

[18 U.S.C. § 473]

On or about May 1, 2008, in Los Angeles County, within the Central District of California, defendants PAUL MCCORRY, CORREY NERO, and EARNEST ALEXANDER sold, exchanged, transferred, and delivered counterfeited obligations and other securities of the United States, namely, approximately $2,000 in counterfeited twenty dollar Federal Reserve Notes, knowing that the notes were counterfeited, and with the intent that the counterfeited notes be passed, published, and used as true and genuine.

## COUNT SEVEN

[18 U.S.C. § 473]

On or about May 1, 2008, in Los Angeles County, within the Central District of California, defendant CORREY NERO sold, exchanged, transferred, and delivered counterfeited obligations and other securities of the United States, namely, approximately $40 in counterfeited twenty dollar Federal Reserve Notes, knowing that the notes were counterfeited, and with the intent that the counterfeited notes be passed, published, and used as true and genuine.

## COUNT EIGHT

[18 U.S.C. § 471]

On or about May 8, 2008, in Los Angeles County, within the Central District of California, defendants ALBERT TALTON, PAUL MCCORRY, and DAVID GOLDBERG, acting with intent to defraud, falsely made, forged, and counterfeited obligations and other securities of the United States, namely, counterfeited $20 and $100 Federal Reserve Notes.

## COUNT NINE

[[18 U.S.C. § 472]

On or about May 8, 2008, in Los Angeles County, within the Central District of California, defendants ALBERT TALTON, PAUL MCCORRY, and DAVID GOLDBERG, acting with intent to defraud, kept in their possession and concealed falsely made, forged, and counterfeited obligations and other securities of the United States, namely, approximately $162,560 in counterfeited Federal Reserve Notes, knowing that the notes were counterfeited.

A TRUE BILL

/S/
_____
Foreperson

THOMAS P. O'BRIEN
United States Attorney

*Christine C. Ewell* (signature)

CHRISTINE A. EWELL
Assistant United States Attorney
Chief, Criminal Division

RODRIGO A. CASTRO-SLIVA
Assistant United States Attorney
Chief, General Crimes Section

TRACY WILKISON
Assistant United States Attorney
Deputy Chief, General Crimes Section

15